IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00448-CNS-KLM

KATHERINE FRIESS,

    Plaintiff,

v.

BENNIE G. THOMPSON, in his official capacity as Chairman of the House Select Committee to Investigate the January 6th Attack on the United States Capitol, and SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL, a committee of the United States House of Representatives,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#24] (the "Motion"). Plaintiff filed a Response [#27] in opposition to the Motion [#24], and Defendants filed a Reply [#33].[1] The Motion [#24] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1. *See* [#26]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#24] be **GRANTED**.

---

[1] Plaintiff actually filed two Responses [#27, #41], and Defendants filed two Replies [#33, #43]. Plaintiff's first Response [#27] was timely filed, while the second Response [#41] was not timely filed and provides no explanation or reason for why it was filed nearly two months after the Motion [#24] was filed. Thus, the Court considers only the original Response [#27] and accompanying Reply [#33] in this Recommendation.

## I. Background[2]

As alleged in the Complaint [#1], Plaintiff, as an attorney, provides confidential counsel and advises clients on legal matters throughout the country and internationally. *Compl.* [#1] ¶ 11.  Plaintiff usually provides the phone number at issue in this case (the "Phone Number") to clients to address their questions and provide the status of their legal matters and concerns. *Id.* ¶ 12.  As legal counsel, she advises these clients that any and all communications remain confidential and protected from disclosure in accordance with the attorney-client privilege. *Id.*  She telecommutes and often works via mobile communications while traveling or in transit. *Id.* ¶ 13.  In fact, since the COVID-19 pandemic began, Plaintiff has counseled clients almost exclusively via telephone communications. *Id.* ¶ 18.  Plaintiff also uses this phone to confer with other attorneys about related client matters and for personal calls with her family and friends, as well as individuals with whom she is in contact for political, religious, health issues and other personal purposes. *Id.* ¶¶ 14, 16.

Starting in November 2019, Plaintiff served as a full-time staff attorney for President Donald Trump. *Id.* ¶¶ 15, 17.  She used the Phone Number to converse with the President and his legal team, as well as with family and friends. *Id.* ¶ 19.  While "on call" for the President and his legal team, the Phone Number served as a point of contact for the President and his legal team to ask questions and seek confidential legal advice often sensitive in nature. *Id.* ¶ 15.

---

[2] For the purpose of resolving the Motion [#24], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

On or around February 9, 2022, Plaintiff received an email from the AT & T Global Legal Demand Center stating that AT&T had received a subpoena duces tecum from the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. *Id.* ¶ 1. The Subpoena requires AT & T to produce certain documents associated with the Phone Number, including all metadata. *Id.* ¶ 22. Among these documents, the Subpoena requires that AT & T provide "subscriber information" including all authorized users on the associated account, and the names and identities of individuals associated with the account, including IP addresses. *Id.* ¶ 23. The Subpoena also requires AT & T to produce "Connection Records, and Records of Session Times and Durations," specifically seeking: "All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detailed records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections." *Id.* ¶ 24. In particular, the Subpoena requires that electronic information produced include "metadata," which is data about data, identifying such features as the date of creation, modification, file sizes and extensions, authors, subject, titles, message identifiers and headers, and internal file paths for all documents provided. *Id.* ¶ 25.

In this lawsuit, Plaintiff asserts four causes of action: (1) Declaratory Judgment and Injunctive Relief (on the basis that the subpoena is allegedly an ultra vires action by the Committee and thus invalid), *id.* ¶¶ 31-38; (2) Violation of the 1st Amendment to the United States Constitution, *id.* ¶¶ 39-51; (3) Violation of State and Federal Statutory Privilege Protections, *id.* ¶¶ 52-61; and (4) Violation of the Rules of the House of

Representatives (based on an alleged failure to issue the subpoena in the presence of a majority of the Committee and an alleged failure to issue the subpoena in the presence of a quorum), *id.* ¶¶ 62-79.  Plaintiff seeks the following relief: (1) "[t]hat the Court enter an order declaring that Defendants' actions . . . violate federal law and the laws of the State of Colorado"; (2) "[t]hat the Court enjoin Defendants' unlawful acts . . . , quash the Subpoena, enjoin Chairman Thomson [sic] and the Committee from enforcing the Subpoena"; and (3) damages, fees, and costs.  *Id.* ¶ 80.  In the present Motion [#24], Defendants seek dismissal of all claims in the Complaint [#1].

## II.  Standard of Review

Fed. R. Civ. P. 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); see Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, in a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.  When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual

allegations." *Id.* at 1003.  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

### III.  Analysis

The Speech or Debate Clause of the United States Constitution states that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl.1.  "The Speech or Debate Clause operates as a jurisdictional bar when the actions upon which a plaintiff [seeks] to predicate liability [are] legislative acts."  *Fields v. Office of Eddie Bernice Johnson, Employing Office, U.S. Cong.*, 459 F.3d 1, 13 (D.C. Cir. 2006).  In other words, the Speech or Debate Clause "protects Members [of Congress] against prosecutions that directly impinge upon or threaten the legislative process," and "Congressmen and their aides are immune from liability for their actions within the legislative sphere, even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional."  *Doe v. McMillan*, 412 U.S. 306, 311, 312-13 (1973).

In *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975), the United States Supreme Court addressed a case against members of a congressional subcommittee which had issued a subpoena to a bank where an entity had an account, directing the bank to produce all records relating to the account.  The entity's suit asserted violation of its First Amendment rights, but the Supreme Court determined that "the actions of the Senate Subcommittee, the individual Senators, and the Chief Counsel are protected by

the Speech or Debate Clause of the Constitution, Art. I, s 6, cl. 1, and are therefore immune from judicial interference." *Eastland*, 421 U.S. at 501. The Supreme Court held that the Speech or Debate Clause is read "broadly to effectuate its purpose[ ]," which "is to insure that the legislative function the Constitution allocates to Congress may be performed independently." *Id.* at 501-02.

The primary legal issue to be determined here is "whether the actions of the petitioners fall within the 'sphere of legitimate legislative activity.'" *Id.* at 501. If so, then they "'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute." *Id.* "In determining whether particular activities other than literal speech or debate fall within the 'legitimate legislative sphere' we look to see whether the activities took place 'in a session of the House by one of its members in relation to the business before it.'" *Id.* at 503 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1881)).

The Supreme Court has stated that "[t]he power to investigate and to do so through compulsory process plainly falls within that definition." *Id.* at 504. "Issuance of subpoenas . . . has long been held to be a legitimate use by Congress of its power to investigate." *Id.* "[T]he subpoena power may be exercised by a committee acting, as here, on behalf of one of the Houses." *Id.* at 505.

> [T]he act 'of authorizing an investigation pursuant to which . . . materials were gathered' is an integral part of the legislative process. The issuance of a subpoena pursuant to an authorized investigation is similarly an indispensable ingredient of lawmaking; without it our recognition that the act 'of authorizing' is protected would be meaningless. To hold that Members of Congress are protected for authorizing an investigation, but not for issuing a subpoena in exercise of that authorization, would be a contradiction denigrating the power granted to Congress in Art. I and would indirectly impair the deliberations of Congress.

*Id.* (internal citations omitted).

Ultimately, the Supreme Court in *Eastland* held that "the Speech or Debate Clause provides complete immunity for the Members [and others sued] for issuance of this subpoena" because the subpoena was "essential to legislating" and because the "Subcommittee was acting under an unambiguous resolution from the Senate . . . ." *Id.* at 506-07. The Supreme Court emphasized that, "in determining the legitimacy of a congressional act we do not look at the motives alleged to have prompted it." *Id.* at 508. "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." *Id.* at 509. "The wisdom of congressional approach or methodology is not open to judicial veto." *Id.* In short, "the absolute nature of the speech or debate protection" is not overcome by other protections in the Constitution such as the exercise of First Amendment rights. *Id.* at 509-10.

Much more recently, in *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021), the United States Court of Appeals for the District of Columbia considered district court subject matter jurisdiction under the Speech or Debate Clause. The Court affirmed the District Court's dismissal of a lawsuit filed against the House Permanent Select Committee on Intelligence and its Chairman based on the committee's issuance of subpoenas to telecommunications providers as part of an impeachment inquiry into the President's activities. Relying heavily on *Eastland*, the D.C. Circuit ultimately held that the Speech or Debate Clause barred the lawsuit because "the Committee's issuance of subpoenas, whether as part of an oversight investigation or impeachment inquiry, was a legislative act . . . ." *Judicial Watch*, 998 F.3d at 992. The Circuit noted that the Speech

or Debate Clause applied even if the subpoenas were issued in violation of congressional rules. *Id.* at 993-94.

Here, much of Plaintiff's Response brief discusses whether her Complaint [#1] meets the standards of Fed. R. Civ. P. 8(a). *Response* [#27] at 1-3, 5. However, Defendants made no argument that in their Motion [#24] that the Complaint [#1] failed to meet the requirements of Rule 8(a), and thus Plaintiff's arguments regarding this rule are irrelevant. Plaintiff does not address Defendants' citations to *Judicial Watch* but does mention *Eastland* to emphasize that the Speech or Debate Clause does not provide immunity where the information could not be used in the legislative sphere. *Response* [#27] at 3-4. The Court is not convinced that the information sought by Defendants' subpoena could not be used in the legislative sphere, based on the following analysis.

In *Budowich v. Pelosi*, __ F. Supp. 3d __, __, No. 21-3366 (JEB), 2022 WL 2274359, at *4-7 (D.C.C. June 23, 2022), the District Court for the District of Columbia applied *Eastland* to determine whether six claims asserted against Speaker Nancy Pelosi, the Select Committee to Investigate the January 6th Attack on the United States Capitol, and its members, based on a subpoena issued by the Committee seeking bank records, were barred based on the Speech or Debate Clause. The six claims were (1) that the Committee was not "duly authorized," (2) that the Committee lacked a valid legislative purpose, (3) violation of the Fifth Amendment's Due Process Clause, (4) violation of the First Amendment, (5) violation of the Fourth Amendment, and (6) violation of the statutory Right to Financial Privacy Act. *Budowich*, 2022 WL 2274359, at *3. In finding that the Speech or Debate Clause barred all six claims, the *Budowich* court engaged in two main inquiries: (1) "whether the subcommittee investigation at issue was 'related to and in

- 8 -

furtherance of a legitimate task of Congress'," and (2) "'the propriety of making [the subpoena target] a subject of the investigation and subpoena.'"  *Id.* at \*5-6 (quoting *Eastland*, 421 U.S. at 505-06).

Here, the Court follows this framework as well, first examining whether the subcommittee investigation is related to and in furtherance of a legitimate task of Congress.  *See id.* at \*5 (citing *Eastland*, 421 U.S. at 505).  The House of Representatives has adopted House Resolution 503, "establish[ing] the Select Committee to Investigate the January 6th Attack on the United States Capitol."  H. Res. 503, 117th Cong. § 1 (2021).  This resolution authorizes the Select Committee to: (1) "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures . . . as it may deem necessary."  *Id.* § 4(a)(1)-(3).  The resolution further authorized the Speaker of the House to appoint up to thirteen Members to the Select Committee, five of whom "shall be appointed after consultation with the minority leader."  *Id.* § 2(a).  In furtherance of its duty to investigate the facts, circumstances, and causes of the attack on January 6th, the Select Committee has issued subpoenas to various government agencies, private companies, and certain individuals, including the subpoena at issue in this lawsuit.

As stated in *Budowich*, "the Select Committee's investigation and subsequent subpoena easily satisfy this threshold inquiry."  *Budowich*, 2022 WL 2274359, at \*5.  Plaintiff fails to direct the Court's attention to any case where the Select Committee's investigation has been found not to further a legitimate task of Congress.  At least one

Court of Appeals has explicitly held that this particular "Committee plainly has a 'valid legislative purpose' and its inquiry 'concern[s] a subject on which legislation could be had.'" *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021), *cert. denied*, __ U.S. __, 142 S. Ct. 1350 (2022). This remains true even if, as Plaintiff alleges, certain House Rules have been broken by the Select Committee (including specifically in connection with issuance of the subpoena), "because an act does not lose its legislative character for Speech or Debate Clause purposes simply because a plaintiff alleges that it violated the House Rules." *Budowich*, 2022 WL 2274359, at *5 (citing, in part, *Rangel*, 785 F.3d at 24) (internal quotation marks and alterations omitted). "Rather, legislative immunity applies whether the disputed legislative action was regular, according to the Rules of the House, or irregular and against their rules." *Budowich*, 2022 WL 2274359, at *5 (citing, in part, *Kilbourn*, 103 U.S. at 203) (internal quotation marks omitted). Therefore, in light of House Resolution 503 and related legal authority, the Court finds that the subcommittee investigation here is related to and in furtherance of a legitimate task of Congress.

Thus, the Court turns to the second inquiry regarding the propriety of making Plaintiff's phone a subject of the investigation and subpoena. *See Budowich*, 2022 WL 2274359, at *6 (quoting *Eastland*, 421 U.S. at 506). The subpoena here seeks subscriber information, connection records, and records of session times and durations of calls for the period of November 1, 2020, through January 31, 2021, regarding Plaintiff's AT&T account. *See Ex. A to Compl.* [#1-1]. The subpoena does not seek communications

content or geolocation data.[3]  *See id.*  According to the Complaint, since November 2019, Plaintiff has counseled the President and his legal team full time in her position as a staff attorney to President Donald Trump.  *Id.* ¶ 17.  Since the COVID-19 pandemic began, Plaintiff has counseled clients almost exclusively via telephone communications.  *Id.* ¶ 18.  Plaintiff uses the Phone Number to converse with the President and his legal team.  *Id.* ¶ 19.

"The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province."  *Eastland*, 421 U.S. at 506 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)).  Rather, the Court must only take a "cursory look at the facts presented by the pleadings" in deciding whether the specific subpoena at issue falls within the scope of the committee's investigation.  *Eastland*, 421 U.S. at 506.  Section 3(1) of House Resolution 503 states that one of the purposes of the Select Committee is "[t]o investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex . . . and relating to the interference with the peaceful transfer of power, including . . . the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process."  Section 4(a)(1)(B) of House Resolution 503 states that one of the functions of the Select Committee is to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol, including facts and circumstances relating to . . . influencing factors that contributed to the domestic terrorist attack on the Capitol and how [such

---

[3]  As the parties undoubtedly recognize, the fact that the subpoena does not seek the content of any communications obviates the need for discussion about the extent to which compliance may disclose attorney-client privileged information.

events] . . . may have factored into the motivation, organization, and execution of the domestic terrorist attack on the Capitol . . . ."

Given the Select Committee's authorizing resolution, the allegations of the Complaint [#1], and the information sought by the subpoena, the Court finds that Plaintiff's phone records are not an improper source for the Select Committee's investigation. *See, e.g.*, *Budowich*, 2022 WL 2274359, at *7 (noting that "the Court's inquiry [into whether the subpoena was overbroad and exceeded any legitimate legislative purpose] is deferential" and that the January 6th Committee had "put forth an adequate basis for its investigation and subpoena"). This finding remains appropriate even if, arguendo, the subpoena's scope is overbroad and/or exceeds any legitimate legislative purpose. Courts have repeatedly rejected such arguments in this context. For example, applying the D.C. Circuit's decision in *Judicial Watch*, the *Budowich* court stated:

> [T]he Court's inquiry into such an assertion is deferential, and the Committee has put forth an adequate basis for its investigation and subpoena. *See Eastland*, 421 U.S. at 508-09 ("If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it."). In fact, the D.C. Circuit recently rejected the similar argument that a congressional committee's subpoenas "served no legitimate legislative purpose" and were "too tangential to the purpose of an impeachment inquiry." *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992 (D.C. Cir. 2021) (internal quotation marks and citation omitted). There, the panel emphasized that the "scope of inquiry is narrow," and that the "wisdom of congressional approach or methodology is not open to judicial veto." *Id.* (internal quotation marks and citation omitted). The Court of Appeals thus concluded that, "based on the record, the unsupported objections to the relevance of the information sought by the Committee's subpoenas fail." *Id.* So, too, here, especially in light of the Select Committee's purpose and knowledge of Budowich's role in funding the Ellipse rally.

*Budowich*, 2022 WL 2274359, at *7.  Here, finding that the investigation falls within the legislative sphere and further finding that Plaintiff's phone is not an improper subject of that investigation, the Court is not at liberty to examine the breadth of the subpoena itself.

Given these findings, the Court further finds that the Speech or Debate Clause bars all claims in Plaintiff's lawsuit.  As noted above, Plaintiff brings four causes of action: (1) Declaratory Judgment and Injunctive Relief (on the basis that the subpoena is allegedly an ultra vires action by the Committee and thus invalid), *Compl.* [#1] ¶¶ 31-38; (2) Violation of the 1st Amendment to the United States Constitution, *id.* ¶¶ 39-51; (3) Violation of State and Federal Statutory Privilege Protections, *id.* ¶¶ 52-61; and (4) Violation of the Rules of the House of Representatives (based on an alleged failure to issue the subpoena in the presence of a majority of the Committee and on an alleged failure to issue the subpoena in the presence of a quorum), *id.* ¶¶ 62-79.  As stated in *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015):

> [The plaintiff] contends that the defendants' conduct cannot be "legislative" because it was, in his view, illegal.  This "familiar" argument—made in almost every Speech or Debate Clause case—has been rejected time and again.  An act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, or even the Constitution.  Such is the nature of absolute immunity, which is—in a word—absolute.  Although absolute immunity creates "a potential for abuse," that potential "was the conscious choice of the Framers buttressed and justified by history."

(internal citations omitted).  In *Eastland*, 421 U.S. at 509-10, the Supreme Court specifically rejected the argument that an alleged violation of the First Amendment could overcome the absolute immunity of the Speech or Debate Claus.  In *Kilbourn v. Thompson*, 103 U.S. at 203, the Supreme Court rejected the argument that violation of House Rules could overcome the absolute immunity of the Speech or Debate Clause.

Regarding the request for declaratory/injunctive relief on the basis that the subpoena is an ultra vires action, the Court has already found that the subpoena falls within the legislative sphere of the Subcommittee, and therefore it is not an ultra vires action. *See* Black's Law Dictionary (11th ed. 2019) (defining "ultra vires" as "[u]nauthorized; beyond the scope of power allowed or granted . . . by law"). Regarding state and federal statutory privilege protections, Plaintiff does not identify any *specific* state or federal statute under which she brings this claim; regardless, the Court is unaware of any legal authority holding that any state or federal privilege statute would be able to overcome the immunity afforded by the Speech or Debate Clause, especially in light of its "absolute" nature. Thus, the Court finds that all of Plaintiff's claims are jurisdictionally barred by the Speech or Debate Clause.

Accordingly, the Court **recommends** that the Motion [#24] be **granted.**

## IV.  Conclusion

Based upon the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#24] be **GRANTED** and that Plaintiff's claims be **DISMISSED without prejudice** for lack of subject matter jurisdiction. *See Judicial Watch, Inc.*, 998 F.3d at 993 (stating that "the Speech or Debate Clause bars Judicial Watch's lawsuit" and remanding "the case to the district court to dismiss the complaint without prejudice inasmuch as the dismissal is for want of subject-matter jurisdiction").

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 26, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge